IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GARY R. SHANNAHAN, DANIEL L.          §
MORTLAND, and KATHRYN M. SCOTT,       §
Individually, and for Others          §
Similarly Situated,                   §
                                      §
        Plaintiffs,                   §
                                      §
                                      §
v.                                    §        CIVIL ACTION NO. H-06-0160
                                      §
DYNEGY, INC., DYNEGY INC.             §
BENEFITS PLAN COMMITTEE, LOUIS        §
DOREY, ROBERT D. DOTY, JR.,           §
ALEC G. DREYER, ANDREA LANG,          §
MICHAEL MOTT, MILTON L. SCOTT,        §
and R. BLACK YOUNG,                   §
                                      §
        Defendants.                   §


MEMORANDUM AND ORDER


        Pending are Defendants Dynegy, Inc., Dynegy Inc. Benefits Plan

Committee, Louis Dorey, Robert D. Doty, Jr., Alec G. Dreyer, Andrea

Lang, Michael Mott, Milton L. Scott, and R. Black Young's Motion to

Dismiss (Document No. 18), and Defendant Robert D. Doty, Jr.'s

Motion to Dismiss (Document No. 19).  After having carefully

considered the motions, responses, reply, and the applicable law,

for the reasons that follow the Court orders as set forth at the

close of this Memorandum.


I.   Background


        Plaintiffs Gary R. Shannahan, Daniel L. Mortland, and Kathryn

M. Scott (collectively, "Plaintiffs"), who are participants in the

Illinois Power Company Incentive Savings Plan (the "Plan"), bring this suit as representatives of the Plan and on behalf of all similarly-situated participants and beneficiaries of the Plan for declaratory, injunctive, equitable, and monetary relief under ERISA § 502(e), 29 U.S.C. § 1132.  Document No. 1 ¶ 1.  Plaintiffs allege that Defendants Dynegy, Inc. ("Dynegy"), the Dynegy Inc. Benefits Plan Committee (the "BPC"), and Louis Dorey ("Dorey"), Robert D. Doty, Jr. ("Doty"), Alec G. Dreyer ("Dreyer"), Andrea Lang ("Lang"), Michael Mott ("Mott"), Milton L. Scott ("Scott") and R. Blake Young ("Young") (collectively with the BPC, the "BPC Defendants"), breached their fiduciary duties to the Plan during the period from January 1, 2002 through January 30, 2003 (the "relevant period").  Id. ¶¶ 1-2.

The Plan is an employee pension plan, employee benefit plan, and defined contribution plan pursuant to 29 U.S.C. §§ 1002(3), 1002(2)(A), and 1002(34), respectively.  Id. ¶¶ 21-22.  It "provides individual accounts for each participant and benefits based solely upon the amount contributed to each participant's account plus any Plan income, expenses, gains, losses, and forfeitures from other accounts that may be allocated to a participant's accounts."  Id. ¶ 22.  The Plan permitted participants to contribute funds to the Plan and invest their contributions in any of a number of funds, one of which was a Company Stock Fund.  Id. ¶¶ 24-25.  After Illinois Power merged with Dynegy, Inc. in February of 2000, this

2

Fund and "all Illinova stock held by the Plan was converted to Dynegy Stock." Id. ¶ 24. The Plan also permitted their employer to make "matching and discretionary contributions to the Plan." Id. ¶ 26. These contributions were required to be made in the form of Class A common stock of Dynegy and held in the Dynegy Stock Fund. Id. As of January, 2002, "all contributions made to each participant's employer discretionary contribution account could be transferred to other fund accounts at any time and at each participant's option." Id. ¶ 28.

Defendant Dynegy, an Illinois corporation with its principal place of business in Houston, Texas, is a producer and deliverer of energy that previously engaged in energy marketing and trading. Id. ¶ 10. Since about February, 2000, Dynegy has been the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Id. Also since February of 2000, the BPC has been the Plan's named fiduciary and the Plan Administrator pursuant to ERISA § 3(16)(A), 29 U.S.C. 1002(16)(A). Id. ¶ 11. Defendants Dorey, Doty, Dreyer, Lang, Mott, Scott, and Young served on the BPC at various times during the relevant period while concurrently serving as officers of Dynegy. Id. ¶¶ 12-18. Plaintiffs allege the BPC Defendants and Dynegy were also fiduciaries of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), because of their exercise of "discretionary authority or discretionary control with respect to the management of the Plan, . . . the

management or disposition of the Plan's assets, and/or . . . discretionary authority or responsibility in the administration of the Plan." Id. ¶¶ 10, 11, 19.

From 2000 through April, 2002, Dynegy's earnings reports and financial statements touted its "'outstanding'" performance, record returns, and "tremendous and sustained growth in revenues." Id. ¶¶ 29-40. On January 11, 2002, a Summary Plan Description ("SPD") within the meaning of ERISA § 102, 29 U.S.C. § 1022 was issued to Plan participants and beneficiaries, containing the following statement:

> Each participant is encouraged to carefully review Dynegy's most recent Annual Report on Form 10-K and each Quarterly Report on Form 10-Q and Current Report on Form 8-K relating to Dynegy's current fiscal year for additional information relevant to investments in the Dynegy Stock Fund.

Id. ¶¶ 45-46. However, Plaintiffs contend that throughout the period preceding and following the distribution of this SPD, Dynegy engaged in a number of questionable financial and business transactions, including: (1) the use of "certain special purpose entities ('SPEs') to report as cash flow from operations money that was actually nothing more than a loan" (hereinafter referred to as "Project Alpha"); (2) "round-trip electricity transactions" which, as "simultaneous, pre-arranged buy-sell trades at the same price, terms and volume[,] . . . lacked any economic substance" but were included in public statements "highlight[ing] an increase in

4

trading traffic"; (3) manipulating natural gas price and volume information to reporting firms; (4) incurring huge amounts of debt; and (5) manipulating the company's financial results to meet profits forecasts.  Id. ¶ 41.  These activities are alleged to have artificially inflated the price of Dynegy stock. Id. ¶ 2.

Plaintiffs allege the BPC Defendants "were either (a) the same officers and directors involved in misrepresenting and/or the manipulation of Dynegy's earnings, or (b) officers and directors in a position to, but who failed to, take the necessary steps to discover the truth about the misrepresentations and financial manipulations."  Id. ¶ 44.  Throughout the relevant period, the Dynegy Stock Fund remained part of the Plan, and employer contributions continued to be made in the form of Dynegy stock. Id. ¶ 47.  By May, 2002, the SEC had begun investigating Dynegy's transactions and financial statements.  Id. ¶ 50. The price of Dynegy stock fell over 32% during April to May of 2002, in reaction to Dynegy's announcement of the investigation.  Id. ¶¶ 49-50. The SEC announced its conclusion on September 24, 2002, that "Dynegy had engaged in securities fraud in connection with its disclosures and accounting for 'Project Alpha' and its use of 'round-trip trades.'"  Id. ¶ 54.  Dynegy settled these charges with the SEC and agreed to pay a fine of $3 million.  Id.  On December 19, 2002, Dynegy announced that the Commodities and Futures Trading Commission had fined Dynegy $5 million for "'knowingly submit[ting]

false [natural gas price and volume] information to the reporting firms in an attempt to skew those indexes for Dynegy's financial benefit.'" Id. ¶ 55.  As these activities came to light, Dynegy was forced to restate its earnings, once on November 14, 2002, and again on January 31, 2003.  Id. ¶ 43. Plaintiffs allege that "[w]hen the market learned that Dynegy's purported spectacular growth was based on sham transactions, phony trades, price manipulation and overstatement of revenues, what had once been a substantial investment in Dynegy stock became essentially worthless." Id. ¶ 48.

Plaintiffs' Counts I through IV allege the BPC Defendants breached their fiduciary duties and caused "substantial losses to the Plan and to the participants' and beneficiaries' retirement savings," see id. ¶ 2, by (1) misrepresenting Dynegy's financial health to Plan participants through the dissemination of the SPD and its incorporation of material and false information in Dynegy's SEC filings; (2) failing to disclose and inform participants and beneficiaries of information material to their investment decisions and to correct misstatements previously made through dissemination of the SPD; (3) failing to eliminate the Dynegy Stock Fund as an investment option; and (4) failing to avoid a conflict of interests.  Plaintiffs also allege against Dynegy Count V, for co-fiduciary liability, and Count VI, knowingly participating in a breach of fiduciary duty.

6

Defendants move to dismiss the Complaint, arguing that (1) Plaintiffs have no standing to sue for damages under 29 U.S.C. § 1132(a)(2); (2) the SPD cannot be a basis for the misrepresentation and failure to disclose claims in Counts I and II; (3) Plaintiffs inadequately plead reliance in Count I; (4) the conclusory allegations in Count IV do not state a claim for breach of the duty to avoid conflict of interests; and (5) certain individual Defendants did not serve on the BPC until after the challenged acts occurred.  Defendants additionally seek to limit Count III to include only employee contributions.  Defendant Doty separately argues to dismiss Counts I and II for failure to plead sufficiently his knowledge of the financial and other problems at Dynegy, and to bar all claims against him arising from conduct occurring after his departure from the BPC.

Defendant Dynegy also moves to dismiss Counts V and VI on the basis that (1) its non-fiduciary status precludes a claim for co-fiduciary liability, or, alternatively that the claim should be limited to a failure to remedy a breach of duty by a fiduciary under 29 U.S.C. § 1105(a)(3); and (2) because Plaintiffs' claims against the BPC Defendants fail, Dynegy cannot be held vicariously liable for their wrongdoing.

## II.  <u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. <u>Scheuer v. Rhodes</u>, 94 S. Ct. 1683, 1686 (1974).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  <u>Id.</u>

In considering a motion to dismiss under Rule 12(b)(6), the district court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint. <u>La Porte Construction Co. v. Bayshore Nat'l Bank of La Porte, Tex.</u>, 805 F.2d 1254, 1255 (5th Cir. 1986); <u>Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.</u>, 677 F.2d 1045, 1050 (5th Cir. 1982), <i>cert. denied</i> 103 S. Ct. 729 (1983); <u>Mann v. Adams Realty Co.</u>, 556 F.2d 288, 293 (5th Cir. 1977). Dismissal of a claim is improper unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  <u>Hughes v. Rowe</u>, 101 S. Ct. 173, 176 (1980); <u>Conley v. Gibson</u>, 78 S. Ct. 99, 102 (1957); <u>Kaiser Aluminum</u>, 677 F.2d at 1050; <u>Mann</u>, 556 F.2d at 293.

III.  <u>Discussion</u>

A.  <u>Standing under 29 U.S.C. § 1132(a)(2)</u>

Title 29 U.S.C. § 1104(a)(1) describes a fiduciary's duties to plan participants and beneficiaries as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
>
> > (A)  for the exclusive purpose of:
> >
> > > (i)  providing benefits to participants and their beneficiaries; and
> > > (ii) defraying reasonable expenses of administering the plan;
> >
> > (B)  with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

The duties of prudence and loyalty embodied in this provision have been characterized as among the "'highest known to law.'"  <u>Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan</u>, 793 F.2d 1456, 1468 (5th Cir. 1986) (quoting <u>Donovan v. Bierwirth</u>, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

Title 29 U.S.C. § 1132 (a)(2) authorizes a plan participant or beneficiary to bring suit for "appropriate relief under section 1109[,]" which in turn imposes personal liability on a plan fiduciary "to make good to such plan any losses to the plan"

9

resulting from a breach of fiduciary duty.  29 U.S.C. §§ 1109(a), 1132(a)(2).  These provisions reflect Congress's concern "with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." Mass. Mut. Life Ins. Co. v. Russell, 105 S.Ct. 3085, 3090 (1985).  *See also* Varity Corp. v. Howe, 116 S.Ct. 1065, 1083 (1996) ("ERISA's fiduciary obligations were designed to regulate the relationship between the fiduciary and the plan, and not the relationship between the fiduciary and individual participants.").  Consequently, in any suit for damages, the recovery sought by a plaintiff must "inure[ ] to the benefit of the plan as a whole . . . ." Russell, 105 S.Ct. at 3089.

Defendants seek dismissal of all claims on the grounds Plaintiffs have no standing to sue for damages under 29 U.S.C. § 1132(a)(2).  They argue that any recovery sought by Plaintiffs and other putative class members, as investors in the Dynegy Stock Fund and a subclass of Plan participants, depends purely on the losses, if any, sustained by their individual accounts and not losses to the Plan as a whole.  *See* Document No. 18 at 15-17; Document No. 24 at 11-12.  At the same time, however, Defendants acknowledge that the Fifth Circuit in a recent *en banc* decision allowed such claims to proceed when, as here, they were challenged by a Rule 12(b)(6) motion.  *See*, Milofsky v. Am. Airlines, Inc., 442 F.3d 311, 313 (5th Cir. 2006) (en banc) (per curiam).  Indeed, this Court is bound to

follow <u>Milofsky</u>.   A unanimous *en banc* court, including the two judges who initially reached a contrary judgment in the panel decision, vacated the panel decision reported at 404 F.3d 338, and held that the district court had erred in dismissing claims by the plaintiffs for alleged losses to the plan to be allocated among only 218 individual accounts out of a much larger plan.   442 F.3d at 313. The court wrote:

> Measured by the principles of notice pleading and the standards controlling dismissal under FED. R. CIV. P. 12(b)(6), the district court erred in dismissing these claims.

<u>Id</u>.   *See also*, <u>In re Schering-Plough Corp. ERISA Litig.</u>, 420 F.3d 231, 234-42 (3d Cir. 2005); <u>Kuper v. Iovenko</u>, 66 F.3d 1447, 1452-53 (6th Cir. 1995); <u>Lively v. Dynegy, Inc.</u>, 420 F. Supp. 2d 949, 953 (N.D. Ill. 2006).

In light of the *en banc* decision in <u>Milofsky</u>, former Chief Judge Carolyn King's dissent from the panel's vacated decision merits careful consideration.   Judge King made the distinction that a recovery inuring to the benefit of the plan as a whole, within the meaning of the <u>Russell</u> decision, does not require that the recovery *directly* benefit all participants in the plan.   *See, e.g.* <u>Milofsky v. Am. Airlines, Inc.</u>, 404 F.3d 338, 349 n.4 (5th Cir. 2005) (King, C.J., dissenting) ("<u>Russell</u> does not . . . stand for the proposition that the 'plan as a whole' is synonymous with 'all participants of the plan'"), *rev'd en banc*, 442 F.3d 311 (5th Cir. 2006); *see also*

<u>Lively</u>, 420 F. Supp. 2d at 953 ("By its clear terms, [ERISA] section 409[, 29 U.S.C. § 1109,] requires fiduciaries to make good 'any losses' to the plan, not just losses that have an impact on every single participant of the plan."). The fact that participants made individualized decisions to invest in a stock offered as part of a defined contribution plan "does not mean that those losses were not losses of the Plan; it simply means that some of the decision making for Plan investments was conducted by the participants who contributed to it." <u>In re Schering Plough</u>, 420 F.3d at 236 (quoting <u>In re Honeywell Int'l</u>, No. Civ. 03-1214(DRD), 2004 WL 3245931, at *30)).   Thus, so long as Plaintiffs plead a loss to and seek recovery for losses to the Plan resulting from a breach of duty owed to the Plan itself, an "indirect[ ] benefit [to plan] participants does not bar derivative action under §§ 1109 and 1132(a)(2)." <u>Id.</u> at 241. *See also* <u>Lively</u>, 420 F. Supp. 2d at 953 (explaining the eventual channeling of a recovery to plaintiffs' accounts "is consistent with the fact that all assets of an individual account pension plan are owned by the Plan, not the participants").   As Judge King pointed out, to deprive plan participants of a [§ 1109] remedy under circumstances such as those pled here would "effectively nullif[y] Congress's intent to provide a high level of protection to any and all plan participants from fiduciary abuse." <u>Milofsky</u>, 404 F.3d at 348 (King, C.J., dissenting). *See also* <u>Kuper</u>, 66 F.3d at 1453 ("Defendants' argument that a breach must harm the

entire plan to give rise to liability under § 1109 would insulate fiduciaries who breach their duty so long as the breach does not harm all of a plan's participants.").

Here, a subclass of Plan participants and beneficiaries—those who had holdings in the Dynegy Stock Fund—have pled an injury to the Plan resulting from Defendants' breaches of fiduciary duty owed to the Plan, and requested "monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the [Defendants'] breaches of fiduciary duties. . . ." *See* Document No. 1 ¶¶ 105-06, 108, 111.  This claim alleges a loss to the Plan such as to confer standing under 29 U.S.C. § 1132(a)(2).

B.   <u>Claims against the BPC Defendants</u>

    1.   Counts I and II:  Misrepresentation and failure to
        disclose

The BPC Defendants challenge Plaintiffs' reliance on a reference in the SPD to the Dynegy SEC filings as a basis for their misrepresentation and disclosure claims in Counts I and II. Specifically, the BPC contends: (1) the alleged untruths in the SEC filings were not made in a fiduciary context, but rather were addressed to the "public at large"; (2) the SPD did not incorporate those filings by reference; and (3) other government regulations require or promote the dissemination of the SEC filings.  Document No. 18 at 9-15.  As Defendants concede, Judge Sim Lake in <u>In re</u>

Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d 861, 877-880 (S.D. Tex. 2004), reached a different conclusion for this Court when considering these same arguments.  Judge Lake's analysis and holding are persuasive, are adopted here, and Defendants' arguments are rejected.

Defendants also contend that Plaintiffs' pleading of reliance in Count I, e.g., that Plaintiffs "relied to their detriment on the material misrepresentations made" by BPC Defendants, Document No. 1 ¶ 72, and that as a result of Defendants' breaches of their fiduciary duties "substantial assets in the Plan were invested in Dynegy stock causing the Plan to ultimately suffer a loss and the Plaintiffs and those they seek to represent to suffer a decrease in their benefits," id. ¶ 105, is insufficient to state a claim. However, "ERISA does not have heightened pleading requirements," and ERISA claims are therefore subject only to the notice pleading standard of Federal Rule of Civil Procedure 8.  In re Dynegy Inc. ERISA Litig., 309 F. Supp. 2d 861, 867.  Plaintiffs therefore need not plead facts establishing the reliance of every Plan participant or, as Defendants contend, make individualized assessments of each member of the putative class and plead which of them "may have been moved to acquire more Dynegy stock . . . ." (Document No. 18 at 19; see also, e.g., In re Cardinal Health, Inc. ERISA Litig., 424 F. Supp. 2d 1002, 1046 (S.D. Ohio 2006) (upholding a claim that alleged, "'[t]he Plan, and the Participants acting on behalf of the

14

Plan, relied upon, and *are presumed to have relied upon,* Defendants'
representations and nondisclosures to their detriment'" (quoting <u>In
re AEP ERISA Litig.</u>, 327 F. Supp. 2d 812, 833 (S.D. Ohio 2004)
(emphasis in the original))).   The cases cited by Defendants
applying a more stringent pleading standard concern class action
certifications and claims for equitable relief, not claims seeking
damages for injury to a plan under 29 U.S.C. § 1132(a)(2).

    Defendant Doty independently argues that Plaintiffs'
allegations of actual or potential knowledge are too conclusory to
sustain a misrepresentation claim against him in Counts I and II.
Document No. 19 at 2.   The Complaint states that Doty served as
Executive Vice-President and Chief Financial Officer of Dynegy from
1999 to June 19, 2002, and on the BPC from April 22, 2002, to
June 19, 2002.   Document No. 1 ¶ 13.   As alleged, Doty and the other
BPC Defendants, because of their "positions in Dynegy, [and] their
access to contradictory information[,]" "knew or should have known"
of Dynegy's true financial circumstances and the risks of the Dynegy
Stock Fund.   <u>Id.</u> ¶¶ 2, 42, 47, 71, 77.   The Complaint describes
Doty's involvement in the manipulation of Dynegy's financial reports
and cites a public statement made by him regarding the activities
of Dynegy that the SEC later determined to be false.   Document No. 1
¶¶ 41, 54.   In sum, Plaintiffs have not only alleged that Defendant
Doty knew of the goings-on at Dynegy, but have pleaded facts
supporting the basis for his knowledge.   These statements are not

15

"wholly conclusory" and therefore satisfy the general pleading standards under Rule 8(a). *Cf.* <u>In re Ferro Corp. ERISA Litig.</u>, 422 F. Supp. 2d 850, 861 (N.D. Ohio 2006) (upholding similar allegations).

2.    Count III:  Breach of duty to eliminate inappropriate
       investment options

Defendants argue that Count III, the counterpart to Count IV in the <u>In re Dynegy ERISA Litig.</u>, should be narrowed to encompass only the employee contributions made to the Dynegy Stock Fund, because the fiduciary duty of the BPC Defendants "did not extend to either the acceptance or investment of *employer contributions* in company stock." Document No. 18 at 23. *See also* <u>In re Dynegy, Inc. ERISA Litig.</u>, 309 F. Supp. 2d at 891-92 (limiting the claim to employee contributions).[1] Plaintiffs do not dispute that the Plan requires all employer contributions to be made in Dynegy stock, but argue that "'no plan provision precluded later elimination of that

_____

[1] Defendant Doty argues for dismissal of Count III, on the grounds that 29 U.S.C. § 1104(c) precludes liability against him when the Plan participants maintained independent discretion and control over their investments.  Document No. 19 at 3.  Judge Lake addressed that argument in <u>In re Dynegy, Inc. ERISA Litig.</u>, 309 F. Supp. 2d at 893-94, and his analysis and conclusion are persuasive. Plaintiffs allege that the BPC Defendants "continued to permit acquisitions of Dynegy stock as an investment alternative in the Plan, without insisting on or providing corrective disclosures with respect to Dynegy's misrepresentations[,]" Document No. 1 ¶ 88, which is "sufficient to state a claim for breach of fiduciary duty against the committee defendants regardless of § 1104(c)'s applicability." *See* <u>In re Dynegy, Inc. ERISA Litig.</u>, 309 F. Supp. 2d at 893-94.

16

stock' as a Plan investment." Document No. 22 at 23 (quoting _Lively_, 420 F. Supp. at 954).

Plaintiffs, in effect, assert an "elimination" claim such as that which was retained in _Lively v. Dynegy_, 420 F. Supp. 2d at 954. _See_ _id._ (analyzing the claim in the context of the same plan). _Lively_, however, did not reference other, conflicting provisions of the plan addressed in _In re Dynegy, Inc. ERISA Litig._, which expressly deny to the plan administrator fiduciary authority over trust assets, and, instead, allocate that authority to the trustee. _See_ Document No. 18 ex. A § 12.1 ("For purposes of the Act, the Committee shall be the Plan 'administrator' and shall be the 'named fiduciary' with respect to the general administration of the Plan (except as to the investment of the assets of the Trust Fund)."); _id._ § 14.2 ("Except as otherwise specifically provided herein and in the Trust Agreement, the Trustee shall have the _sole_ responsibility for the administration, investment, and management of the assets held under the Plan.") (emphasis added). In sum,

> [b]ecause the Dynegy Plan not only required the employer match to be made exclusively in company stock contributed directly to the trust fund, but also expressly precluded the committee defendants from serving as plan administrator or named fiduciary with respect to investment of trust funds, the court concludes that plaintiff will not be able to prove any set of facts capable of establishing that the committee defendants breached fiduciary duties of loyalty and prudence owed to the Plan by continuing to accept the employer match in company stock because their fiduciary duties did not extend to either the acceptance or the investment of employer matching contributions.

_In re Dynegy ERISA Litig._, 309 F. Supp. at 892.[2]  Accordingly, the Court grants Defendant's motion to dismiss Claim III as it applies to employer contributions and limits the claim to employee contributions.

>    3.    Count IV: Conflict of interests

The BPC Defendants seek dismissal of Count IV, contending that Plaintiffs' allegations are conclusory and do not state a claim for breach of fiduciary duty arising from a conflict of interests.  _See_

---

[2]  Alternatively, Plaintiffs argue that the overriding fiduciary obligations of the BPC Defendants, coupled with the seriousness of the financial impact on the Plan participants and beneficiaries, required them to disregard Plan limitations. Document No. 23 at 24 (citing _In re Sprint Corp. ERISA Litig._, 388 F. Supp. 2d 1207, 1221-25 (D. Kan. 2004)).  _In re Dynegy, Inc. ERISA Litig._, rejected a similar contention that in limited circumstances a fiduciary may breach his duty if he does not disregard plan terms.  _See In re Dynegy, Inc. ERISA Litig._, 309 F. Supp. 2d at 892 n.52 (discussing _In re Ikon Office Solutions, Inc. Securities Litig. (Whetman v. Ikon)_, 86 F. Supp. 2d 481 (E.D. Pa. 2000)).  Although Plaintiffs allege the BPC Defendants "could not have reasonably made a determination that Dynegy stock was a suitable investment for the Plan or a participant's or beneficiary's discretionary account[,]" Document No. 1 ¶ 87, Plaintiffs make no allegation that the BPC Defendants breached their fiduciary duty by failing to act in defiance or derogation of the terms of the Plan that _required_ the employer match to be made exclusively in company stock contributed directly to the trust fund and expressly precluded BPC Defendants from serving as fiduciary with respect to investment of trust funds.  Moreover, Plaintiffs do not allege _how_ the BPC Defendants could have lawfully usurped the authority of the employer so as to direct its contributions in contravention of the Plan or _how_ they could have lawfully usurped the role of the independent trustee of the trust funds so as to assume control over how the funds were invested.  In short, Plaintiffs' theoretical argument that the BPC Defendants were under a fiduciary duty to disregard the Plan limitations is an argument unrelated to any allegations in Plaintiffs' Complaint.

18

Document No. 18 at 20-21; Document No. 19 at 3.   A conflict of interest claim must allege "either an identifiable conflict or harm, and . . . allege . . . that the committee defendants benefitted from that conflict . . . [and] how they benefitted . . . ."   <u>In re Dynegy, Inc. ERISA Litig.</u>, 309 F. Supp. 2d at 897.   An individual's dual role as a fiduciary to the plan and employee of its sponsor is not alone sufficient to establish a conflict of interest.   *See* 29 U.S.C. § 1108(c)(3) ("Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from . . . serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest.").   Nor does a conflict arise solely because a fiduciary owns stock in the employer company.   *See* <u>In re Syncor ERISA Litig.</u>, 351 F. Supp. 2d 970, 988 (C.D. Cal. 2004) ("Under this theory, corporate defendants would always have a conflict of interest.").   However, "when th[e] dual interests [of fiduciaries] conflict, the duty of loyalty is implicated."   <u>In re Ferro Corp.</u>, 422 F. Supp. 2d at 866.

The Complaint alleges a conflict on the part of the BPC Defendants, who, "by virtue of their positions with Dynegy, had an interest in maintaining Dynegy's inflated stock price for the company's benefit and their own benefit" and "an interest in convincing Plan participants and beneficiaries to increase or at least maintain their level of investment in Dynegy stock" although "it was not in the best interest of the Plan participants to

maintain or increase their level of investment in [the artificially inflated shares of] Dynegy."   Document No. 1 ¶¶ 91, 92.   The Complaint also identifies an actual conflict on the part of BPC members Dorey, Lang, and Mott, who allegedly benefitted directly from selling personal shares of Dynegy stock at an artificially inflated price while failing to disclose to participants and beneficiaries their conflict of interests and the circumstances at Dynegy of which they knew or should have known.   Document No. 1 ¶¶ 47, 57, 91, 93.   Because no heightened pleading standard applies to ERISA claims, Plaintiffs have sufficiently pled a breach of fiduciary duty of loyalty arising from conflict of interests.[3]

4.   Claims against specific BPC Defendants

a.   Defendants Dreyer, Dorey, Mott and Young

Defendants also seek dismissal of all counts against Defendants Dreyer, Dorey, Mott and Young (collectively, the "Post-SPD Defendants"), contending their tenure on the BPC postdates the acts and omissions alleged in the Complaint.   These Defendants joined the

---

[3] Defendants alternatively move to limit Count IV to employee contributions, characterizing Count IV as "nothing more than a reprise of Count III." Document No. 18 at 21 n.15.  This request is denied inasmuch as the Plan did not restrict the BPC Defendants from fulfilling their duty of loyalty to the Plan by disclosing their conflicts of interest and/or the artificial inflation of Dynegy shares to all Plan participants, regardless of whether the Dynegy shares in the Plan were or were not contributed by the employer.

BPC four months or more after the SPD was distributed in January,
2002.  *See* Document No. 1 ¶¶ 12, 14, 16, 18, 46.[4]  Plaintiffs reply
that their allegations charge these Defendants with conduct that
occurred after the distribution of the SPD, and during the time the
Post-SPD Defendants served on the BPC, which constituted breaches
of their fiduciary duties.

Title 29 U.S.C. § 1109(b) provides, "No fiduciary shall be
liable with respect to a breach of fiduciary duty under this
subchapter if such breach was committed before he became a fiduciary
or after he ceased to be a fiduciary." *See also* <u>Pegram v. Herdrich</u>,
120 S.Ct. 2143, 2152-53 (2000) ("[T]he threshold question is not
whether the actions of some person employed to provide services
under a plan adversely affected a plan beneficiary's interest, but
whether that person was acting as a fiduciary (that is, was
performing a fiduciary function) when taking the action subject to
complaint.").

Count I alleges that the BPC Defendants breached their duty not
to make affirmative material misrepresentations, and specifically
points to the January 11, 2002, SPD which, in turn, encouraged Plan
participants to review Dynegy's SEC filings, which were incorporated
by reference.  Document No. 1 ¶¶ 62-74.  Plaintiffs argue that the

---

[4] The Post-SPD Defendants served on the BPC during the
following periods: (1) Dorey, from June, 2002 to July 28, 2002;
(2) Dreyer, from May 3, 2002 to January 30, 2003; (3) Mott, from
"at least" September, 2002 to January 17, 2003; and (4) Young, from
October 27, 2002 to the present.  Document No. 1 ¶¶ 12, 14, 16, 18.

Post-SPD Defendants can be held liable for the affirmative act of issuing the SPD because of subsequent SEC filings and Defendants' failure to correct the January 2002 SPD.  Document No. 1 ¶ 74.  The only affirmative material misrepresentation identified in Count I of the Complaint, however, is based on issuance of the SPD itself, which was issued from four to eleven months before the Post-SPD Defendants joined the BPC.  The subsequent SEC filings were not made by the BPC and Plaintiffs' claims against the Post-SPD Defendants are for *failure* to act, not for breach of a duty by *acting* to make material misrepresentations.  Since that alleged breach of duty in issuing the SPD with its affirmative misrepresentations was committed *before* the Post-SPD Defendants became fiduciaries, the Post-SPD Defendants are entitled to have Count I dismissed against them.  *See* 29 U.S.C. § 1109(b); Pegram, 120 S.Ct. at 2152-53.[5]

In contrast, Counts II, III, and IV sufficiently identify actionable conduct during the Post-SPD Defendants' tenures on the BPC.  Count II alleges that Defendants "fail[ed] to disclose to Plan

_____

[5] Plaintiffs also argue that the Post-SPD Defendants by reason of their "discretionary authority or discretionary control with respect to the management of the Plan . . .," were fiduciaries apart from their service on the BPC.  Document No. 1 ¶ 19; Document No. 22 at 21.  Count I, however, does not identify any misrepresentations made by the Post-SPD Defendants in a fiduciary capacity. Therefore, assuming without deciding that the fiduciary status of the Post-SPD Defendants is not limited to their service on the BPC, Count I must be dismissed against them for failure to articulate an actionable misrepresentation.  *See* James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 449 (6th Cir. 2002) (stating the first element of a misrepresentation claim, "that the defendant was acting in a fiduciary capacity when it made the challenged representations").

participants and beneficiaries material information about the appropriateness of investing in Dynegy stock and about Dynegy's questionable earnings and tenuous business condition, which they knew of or should have known of, and which they knew or should have known the Plan participants and beneficiaries had no way o[f] knowing." Document No. 1 ¶ 79.   This challenged conduct is not limited to the period predating the Post-SPD Defendants' membership on the BPC.   Count III asserts Defendants "knew or were in a position to discover the facts relevant to the suitability and fair pricing of Dynegy stock at all relevant times[,]" but "failed to investigate and monitor the appropriateness of investing in Dynegy Stock . . . ."   Document No. 1 ¶¶ 86-87.   The claimed omissions apply to all Plan administrators during the relevant period, including the Post-SPD Defendants.   Lastly, the alleged conflict of interests in Count IV is predicated on each BPC Defendant's dual role as Plan administrator and employee of Dynegy throughout the relevant period, including the period during which the Post-SPD Defendants served on the BPC.   Document No. 1 ¶ 91.   Accordingly, Counts II, III, and IV allege on-going breaches of fiduciary duty that occurred during the Post-SPD Defendants' tenures on the SPD and will not be dismissed.

b.   Defendant Doty

Defendant Doty moves to dismiss all claims against him arising from conduct that occurred after he left the BPC on June 19, 2002. Document No. 19 at 3.  Plaintiffs acknowledge that this is the date when Doty left his post on the BPC and resigned as an officer of Dynegy. Document No. 1 ¶ 13. However, Plaintiffs contend that Doty's fiduciary authority is "broader than his tenure on the [BPC]." Document No. 23 at 6.  Nonetheless, the admitted fact is that Doty left his employ at Dynegy and ended his service on the BPC on June 19, 2002.  The acts and omissions that are identified by Plaintiffs as breaches of fiduciary duties by the BPC Defendants--including those alleged specifically against Doty--pertain to conduct of the BPC and its members.  Viewing these allegations in light of § 1109(b)'s exclusion of liability against fiduciaries upon the termination of their fiduciary status, Plaintiffs can prove no set of facts to support a holding that Doty is liable for any of the alleged acts or omissions after June 19, 2002.

C.   <u>Claims against Dynegy, Inc.</u>

1.   Count V:  Co-fiduciary liability

Defendants argue for dismissal of Count V, contending the Complaint insufficiently establishes Dynegy's fiduciary status, a

24

prerequisite to a claim of co-fiduciary liability.  Document No. 18 at 24 n.18.  To be held liable as a co-fiduciary, it must first be shown that a defendant is a fiduciary. *See* 29 U.S.C. § 1105(a) (describing co-fiduciary liability in terms of a *fiduciary*'s participation in, enablement of, or knowledge of another's breach of fiduciary); <u>Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan</u>, 883 F.2d 345, 352 (5th Cir. 1989) (reasoning that a jury's finding of no fiduciary status precluded defendants' liability as co-fiduciaries).  Fiduciary status need not be expressly conferred, but may arise from the "exercise[ of] any discretionary authority or discretionary control respecting management of [a] plan or exercise[ of] any authority or control respecting management or disposition of its assets . . . ."  29 U.S.C. § 1002(21)(A)(i); *see also* <u>Mertens v. Hewitt Assocs.</u>, 113 S. Ct. 2063, 2071 (1993) (ERISA " defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan . . .") (emphasis in the original); <u>In re Dynegy, Inc. ERISA Litig.</u>, 309 F. Supp. 2d at 872 (using the term, "functional fiduciary" to describe this type of *de facto* fiduciary).  A party who acquires fiduciary status does so "only with respect to those aspects of the plan over which he exercises authority or control." *See* <u>Sommers Drugs Stores Co. Employees Profit Sharing Trust</u>, 793 F.2d at 1460; <u>Bannister v. Ullman</u>, 287 F.3d 394, 401 (5th Cir. 2002) (citing <u>Sommers</u>).

However, ERISA exempts from liability certain acts by a plan sponsor that are analogous to those performed by the settlor of a trust.  *See* Hughes Aircraft Co. v. Jacobson, 119 S.Ct. 755, 763 (1999) (excluding from liability formal or structural decisions); Izzarelli v. Rexene Prods. Co., 24 F.3d 1506, 1524 (5th Cir. 1994) ("Business not regulated by ERISA has been widely held to include decisions to *amend or terminate ERISA plans*. . . .") (emphasis in the original).  Neither does "[a]n employer's ability to select the plan administrator. . . , by itself, confer upon it the role of fiduciary." St. Francis Hosp. and Med. Cent. v. Blue Cross & Blue Shield, Inc., 776 F. Supp. 659, 662 (D. Conn. 1991).  Nevertheless, determining a party's fiduciary status is a mixed question of law and fact that "is typically premature to determine . . . at the motion to dismiss stage of the proceedings." In re Elec. Data Sys. Corp., 305 F. Supp. 2d at 665.

Plaintiffs allege that Dynegy exercised discretionary authority or control over the management, administration or assets of the Plan, and thereby became a fiduciary.  Further, Plaintiffs allege, Dynegy had the authority to choose members of the Plan committee and had fiduciary duties in that capacity.  Plaintiffs allege that Dynegy had knowledge of the breaches of fiduciary duties by the BPC Defendants and failed to take remedial action to protect the Plan participants or to make any efforts to remedy the breaches, all in violation of its own fiduciary duties.  At least at this pleading

stage of the case, it cannot be found that Plaintiffs will not be able to prove any set of facts capable of establishing that Dynegy breached a co-fiduciary duty.[6]

>    2.   Count VI:  Knowing participation in a breach of
>         fiduciary duty

Count VI seeks equitable relief against Dynegy, "to the extent that Dynegy is found not to have been a fiduciary" for knowing participation in breaches of fiduciary duty by others.  Document No. 1 ¶¶ 101-02.  Defendants urge the Court to dismiss Count VI as "nothing more than 'an attempt to hold Dynegy vicariously liable for the purported breaches of others' . . . ." Document No. 18 at 24 (quoting In re Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d at 907).  For the reasons stated by Judge Lake in ruling on the same point in In re Dynegy, Inc. ERISA Litig., 309 F. Supp. at 907, "plaintiff's allegations are sufficient to state a claim for equitable relief against Dynegy."

>                          IV.   Order

Based on the foregoing, it is

ORDERED that Dynegy, the BPC, and Defendants Dorey, Dreyer, Lang, Mott, Scott, and Young's Motion to Dismiss (Document No. 18)

---

[6] The parties are agreed that Count V should "be narrowed to a claim solely under [29 U.S.C. § 1105](a)(3)."  Document No. 18 at 24; Document No. 22 at 24-25.

is GRANTED IN PART, and Count III for breach of fiduciary duty to eliminate inappropriate investment options is DISMISSED insofar as the allegation applies to employer contributions, and Court III is therefore limited to employee contributions.  Additionally, Count I against Defendants Dorey, Dreyer, Mott, and Young is DISMISSED with prejudice.  In all other respects, the motion is DENIED.

ORDERED that Defendant Doty's Motion to Dismiss (Document No. 19) is GRANTED IN PART, and all claims against him for conduct after June 19, 2002, are DISMISSED, thereby limiting the claims against Doty to those for conduct occurring before June 19, 2002. Doty's Motion to Dismiss is otherwise DENIED.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 6th day of November, 2006.


_____

EWING WERLEIN, JR.

UNITED STATES DISTRICT JUDGE