United States Courts
Southern District of Texas
ENTERED

SEP 1 4 2007

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GARY R. SHANNAHAN, DANIEL L. MORTLAND, AND KATHRYN M. SCOTT, INDIVIDUALLY AND FOR OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFFS,<br><br>VS.<br><br>DYNEGY, INC., DYNEGY INC. BENEFIT PLANS COMMITTEE, LOUIS DOREY, ROBERT D. DOTY, JR., ALEC G. DREYER, ANDREA LANG, MICHAEL MOTT, MILTON L. SCOTT, AND R. BLAKE YOUNG,<br><br>DEFENDANTS. | Civil Action No. 4:06-cv-00160<br><br>Class Action |

## ORDER AND FINAL JUDGMENT

On September 14, 2007, this *Court* held a final hearing on a proposed class settlement (the "*Settlement*").[1] This *Court* orders as follows:

1. The *Court* has jurisdiction over the subject matter and all parties to this case, including all members of the *Settlement Class*.

2. Pursuant to FED. R. CIV. P. 23(e)(1)(A) and (C), the *Court* hereby approves and confirms the *Settlement* embodied in the *Settlement Agreement* as being a fair, reasonable and adequate settlement and a compromise of the claims asserted in the *Actions*. The *Court* orders that the *Settlement Agreement* shall be consummated and implemented in accordance with its terms and conditions.

---

[1] All capitalized and italicized terms used herein shall have the same meanings as are ascribed to them in the Class Action Settlement Agreement between the *Named Plaintiffs* and the *Defendants* dated January 24, 2007 (the "*Settlement Agreement*") (Dkt. No. 37, Attachment 1, Exhibit A). All capitalized but not italicized terms used herein shall have the meaning ascribed to them by this judgment.

## CLASS CERTIFICATION AND SETTLEMENT APPROVAL

3. Subject only to paragraph 13 below, the *Court* hereby grants class certification to the *Settlement Class* defined as follows:

> (a) all *Persons* who have been participants in the *Plan* at any time between February 1, 2000 and the *Agreement Execution Date,* inclusive, and (b) as to each *Person* within the scope of subsection (a) of this Section his, her, or its beneficiaries, alternate payees, *Representatives* and *Successors-In-Interest*; provided, however, that notwithstanding the foregoing the *Settlement Class* shall not include any of the Individual Defendants (defined to include all *Defendants* other than Dynegy Inc.), Dynegy Inc., or any of Individual Defendants' *Immediate Family*, beneficiaries, alternate payees, *Representatives* or *Successors-In-Interest*, except for *Immediate Family*, beneficiaries, alternate payees, *Representatives*, or *Successors-In-Interest*, who themselves were participants in the *Plan*, who shall be considered members of the *Settlement Class* with respect to their own *Plan* accounts.

4. Subject only to 13 below, the *Court* finds that the *Settlement Class* is properly certified and settled under FED. R. CIV. P. 23(a)(1-4), (b)(1), (b)(2), (c)(1)(B), (e) and (g), and makes the following findings of fact, conclusions of law and determinations of mixed fact/law questions:

> A. The *Settlement Class* is so numerous that it is impracticable to bring all class members before the *Court* individually. Information maintained by the Plan's record keepers indicates that the *Settlement Class* is comprised of more than 1900 members, and the *Defendants* concur with this estimate. The size of the *Settlement Class* satisfies the FED. R. CIV. P. 23(a)(1) impracticability of joinder requirement.
>
> B. The *Settlement Class*' allegations present common questions of law or fact in satisfaction of FED. R. CIV. P. 23(a)(2). Questions of law and fact that are common to the *Settlement Class* include:
>
>> (i) whether the *Defendants* on the *Plan* committee breached their duty not to make affirmative material misrepresentations;
>>
>> (ii) whether the *Defendants* on the *Plan* committee breached their duty to disclose and inform *Plan* participants regarding the risks associated with investing in Dynegy stock;

*Order and Final Judgment, page 2.*

(iii) whether the *Defendants* on the *Plan* committee breached their fiduciary duties by failing to eliminate Dynegy stock as a *Plan* investment option;

(iv) whether the *Defendants* on the *Plan* committee breached their fiduciary duties by failing to avoid a conflict of interest; and

(v) whether Dynegy is liable as a co-fiduciary because it knew about, but failed to take reasonable steps to remedy, the breaches of the *Defendants* on the *Plan* committee.

C. The requirement of FED. R. CIV. P. 23(a)(3) that the claims of the representative parties be typical of the claims of the *Settlement Class* is satisfied. The FED. R. CIV. P. 23(a)(3) requirement is satisfied where the claims of the named plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory. In the present case, the *Named Plaintiffs* allege, among other things, that they were *Plan* participants or beneficiaries during the *Class Period*, that the *Plan*'s fiduciaries treated them and all other *Plan* participants alike, and that *Plan*-wide relief is necessary and appropriate under ERISA. Under these circumstances, the claims asserted by the *Named Plaintiffs* are sufficiently typical of the claims asserted by the *Settlement Class* as a whole in satisfaction of FED. R. CIV. P. 23(a)(3).

D. The requirements of FED. R. CIV. P. 23(a)(4) are also satisfied. The *Named Plaintiffs* have no conflicting interests with absent members of the *Settlement Class*. On the contrary, the *Named Plaintiffs* appear to be strongly motivated to establish liability on the part of the *Defendants* and to obtain *Plan*-wide relief for the benefit of all *Settlement Class* members. The *Court* is satisfied that *Co-Lead Counsel* are qualified, experienced, and prepared to represent the *Settlement Class* to the best of their abilities.

E. The *Settlement Class* not only satisfies each requirement of FED. R. CIV. P. 23(a), but also is maintainable under FED. R. CIV. P. 23(b)(1). Given the nature of an *ERISA* claim which authorizes plan-wide relief, there is a risk that failure to certify the *Settlement Class* would leave future plaintiffs without relief. There is also risk of inconsistent dispositions that would prejudice the *Defendants* by contradictory rulings as to whether various *Defendants* had, in this context, acted as fiduciaries, or whether the *Plan*'s continued investment in Dynegy stock was prudent. This is an appropriate case for class certification under FED. R. CIV. P. 23(b)(1).

F. The *Settlement Class* is also maintainable under FED. R. CIV. P. 23(b)(2). The *Defendants* have acted or refused to act on grounds generally applicable to the class by their management of the *Plan*, which gives rise to claims for *Plan*-wide relief. The *Named Plaintiffs* therefore seek injunctive, declaratory, and equitable monetary relief for the *Settlement Class*, which is the type of claim properly certifiable under FED. R. CIV. P. 23(b)(2).

G. The *Court* has also considered each of the elements required by FED. R. CIV. P. 23(g) in order to ensure that *Co-Lead Counsel* has fairly and adequately represented the interests of the *Settlement Class*. *Co-Lead Counsel* who seek to represent the *Settlement Class* in this matter have done substantial work to identify or investigate potential claims in the *Actions*. The *Court* recently upheld certain claims asserted in the *Complaint* in this case in the face of the *Defendants*' motion to dismiss. *Co-Lead Counsel* state that they have investigated the allegations made in the *Complaint* by interviewing witnesses, reviewing publicly-available information, reviewing thousands of pages of documents obtained in the course of discovery, and consulting with experts. This is the type of investigation that is proper and sufficient at this stage of litigation, which tends to support the *Court's* finding that *Co-Lead Counsel* will fairly and adequately represent the interests of the *Settlement Class*. *Co-Lead Counsel* have experience in handling class actions, other complex litigation, and claims of the type asserted in this action. *Co-Lead Counsel* has also demonstrated knowledge of the applicable law. Finally, *Co-Lead Counsel* have devoted considerable resources to this litigation, including the efficient delegation of work and responsibility among partners, associates, paralegals, document clerks, and third party vendors, and among the offices of *Co-Lead Counsel* McClanahan & Clearman, L.L.P. and McDade Fogler, LLP. The *Court* concludes that efficient use of the various resources available to *Co-Lead Counsel* has been sufficient to represent the interests of the *Class*.

H. The *Settlement Class* has been given proper and adequate notice of the *Settlement Agreement*, the *Fairness Hearing*, *Co-Lead Counsel's* application for attorneys' fees and expenses and for *Named Plaintiffs'* compensation, and the *Plan of Allocation*, such notice having been carried out in accordance with this Court's "Findings and Order Preliminarily Certifying a Class for Settlement Purposes, Preliminarily Approving the Proposed Settlement, Approving the Form and Dissemination of Class Notice, Preliminarily Approving Co-Lead Counsel's Attorneys' Fees and Expenses, and Setting a Date for a Hearing on Final Approval" ("*Preliminary Approval Order*"). Such notice included individual notice to all members of the *Settlement Class* who could be

identified through reasonable efforts, and it provided valid, due and sufficient notice of these proceedings and of the matters set forth therein, and included information regarding the procedure for the making of objections. Such notice fully satisfied the requirements of FED. R. CIV. P. 23 and the requirements of due process.

I. The *Court* finds that the *Settlement* embodied in the *Settlement Agreement* is fair, reasonable and adequate, based on the following findings of fact, conclusions of law and determination of mixed fact/law questions:

   (i) The *Settlement* was negotiated vigorously and at arm's-length by the *Named Plaintiffs* and their experienced counsel on behalf of the *Settlement Class* seeking plan-wide relief for the *Plan* pursuant to ERISA §§ 409 and 502(a)(2).

   (ii) This case settled after the *Court* had already ruled on the *Defendants*' motion to dismiss, after completion of substantial document discovery, and after the *Named Plaintiffs* had retained a damages expert. The *Named Plaintiffs* had also filed their motion for certification of a litigation class. Both the *Named Plaintiffs* and *Defendants* were well positioned to evaluate the settlement value of the case.

   (iii) If the *Settlement* had not been achieved, both the *Named Plaintiffs* and *Defendants* faced the expense, risk and uncertainty of extended litigation. The *Named Plaintiffs* contend that their chances of success at trial were good, in view of the favorable case law expressed in similar cases, in view of the expert testimony that the *Named Plaintiffs* expected to offer at trial, in view of the structure of the *Plan* and its administration (in which Dynegy named some of its key senior executives as fiduciaries for the *Plan*), and in view of what the *Named Plaintiffs* characterize as compelling documents and testimony that they expected to offer at trial. The *Defendants* contend that their chances of success at trial were excellent for several reasons, including the *Court's* dismissal of certain claims in its ruling on the motion to dismiss, the *Defendants'* position on the legal presumptions favoring the offering of company stock in ERISA plans, their position on the *Named Plaintiffs'* high burden of proof at trial, the expert testimony that the *Defendants* expected to offer at trial, other possible explanations for the *Plan's* alleged losses unrelated to actions or inactions of the *Plan's* fiduciaries, and the applicable statute of limitations. The Court takes no position on the merits of either the *Named Plaintiffs'* or the

>  *Defendants'* case, but notes these arguments as evidence in support of the reasonableness of the *Settlement*.
>
> (iv) The amount of the *Settlement* – $9,975,000 – is fair, reasonable and adequate. The *Settlement* amount is within the range of settlement values obtained in similar cases, and more importantly, it is within the range of reasonable settlements that would have been appropriate in the *Actions*.
>
> (v) At all times, the *Named Plaintiffs* have acted independently.
>
> (vi) The *Court* has duly considered all objections that were filed, and the *Court* denies each objection.

5. Subject only to paragraph 13 below, the *Court* dismisses this case with prejudice, each party to bear his, her or its own costs, except as provided herein.

6. Subject only to paragraph 13 below, by operation of this Judgment, the members of the *Settlement Class* and *Co-Lead Counsel* finally and forever release the *Releasees* from all *Released Claims*, and the *Defendants*, on their own behalves and on behalf of the *Successors-in-Interest*, finally and forever release the *Plaintiff Releasees* from all *Claims* relating to the institution or prosecution of the *Actions* or the settlement of any *Released Claims*.

## PLAN OF ALLOCATION

7. As set forth in section 8.3.4 of the *Settlement Agreement*, the *Net Proceeds* of the *Settlement* shall be distributed to the *Plan* for allocation to *Plan* participants, former *Plan* participants, and *Plan* beneficiaries by the *Plan* trustee. The *Plan* trustee shall treat the *Net Proceeds*, which are made to restore losses to the *Plan* resulting from actions by one or more *Plan* fiduciaries for which there is a reasonable risk of liability for breach of fiduciary duty under Title I of ERISA, and which are intended to treat similarly situated *Plan* participants and former participants (and the beneficiaries

of such participants and former participants) in similar ways, as restorative payments consistent with Revenue Rule 2002-45, 2002-2 C.B. 116, 2002 WL 1378252.

8.  The *Plan* trustee shall allocate the *Net Proceeds* of the *Settlement* pursuant to the following instructions, known as the *Plan of Allocation*:

   A. Using the *Plan*'s records and other records as necessary, the *Plan* trustee shall identify each member of the *Settlement Class*.

   B. An "Adjusted Net Loss" shall be calculated for each member of the *Settlement Class*.

      (i) Adjusted Net Loss shall be equal to the sum of:

         (a) the participant's Dynegy Stock Fund Plan account balance at the beginning of the *Class Period* or on the date that the class member first became a participant in the *Plan*, whichever is later ("the Beginning Date");

         (b) plus the dollar amount added (through employee contributions, employer contributions in cash or stock or cash dividends) to a participant's Dynegy Stock Fund Plan account from the Beginning Date through the Ending Date (as defined below);

         (c) plus 1 times the dollar amount added to a participant's Dynegy Stock Fund Plan account from February 1, 2000 through April 25, 2002;

         (d) plus .5 times the dollar amount added to a participant's Dynegy Stock Fund Plan account from April 26, 2002 through May 14, 2002;

         (e) plus .25 times the dollar amount added to a participant's Dynegy Stock Fund Plan account from May 15, 2002 through July 22, 2002;

         (f) plus .1 times the dollar amount added to a participant's Dynegy Stock Fund Plan account from July 23, 2002 until the end of the *Class Period*;

      (ii) minus the sum of:

         (a) the dollar amount of a participant's Dynegy Stock Fund Plan account balance at the end of the *Class*

        *Period*, or the date the *Settlement Class* member withdrew the balance of his or her account from the *Plan*, or the date a participant's assets transferred from the Dynegy Stock Fund due to a plan-to-plan transfer, whichever is earlier (the "Ending Date");

    (b)    plus the dollar amount of all distributions and transfers from a participant's Dynegy Stock Fund Plan account during the *Class Period*.

    (c)    plus the value of in-kind distributions of Dynegy stock made to the participant from the Dynegy Stock Fund.

C.    For purposes of the *Plan of Allocation*, "dollar amount" means cash value or value in dollars of Dynegy stock on the date that the stock was contributed to or transferred out of the *Plan*.

D.    If the Adjusted Net Loss for a class member is zero or negative, the *Settlement Class* member shall not recover any portion of the *Net Proceeds*. The positive Adjusted Net Losses of the *Settlement Class* members shall be aggregated.

E.    Each *Settlement Class* member with a positive Adjusted Net Loss will be assigned an Adjusted Net Loss Percentage, which shall be his, her or its Adjusted Net Loss as a percentage of the aggregated Adjusted Net Losses of the entire *Settlement Class*.

F.    The *Plan* trustee shall allocate to each *Settlement Class* member with a positive Adjusted Net Loss a share of the *Net Proceeds* (less the *Plan* expenses reasonably and necessarily incurred in implementing the *Plan of Allocation*), multiplied by the *Settlement Class* member's Adjusted Net Loss Percentage ("Class Member Share"). *Class Member Shares* shall be rounded to the nearest whole penny, and the amounts so distributed shall be treated as fully vested.

G.    The *Plan* trustee shall distribute *Class Member Shares* by depositing *Class Member Shares* into *Plan* accounts of each *Settlement Class* member, subject to subparagraph I below. As necessary, the *Plan* trustee shall open *Plan* accounts for former *Plan* participants or the beneficiaries of former *Plan* participants.

H.    If the *Plan* trustee in consultation with the *Plan's* named fiduciaries determines that it is in the *Plan's* best interest to issue checks to *Settlement Class* members who are former *Plan* participants of the beneficiaries of former *Plan* participants, the *Plan* trustee may do so provided that such *Settlement Class* members are fully advised

concerning how to preserve for their *Class Member Shares*, to the maximum degree possible, the tax benefits associated with ERISA-qualified plans.

I. If the *Plan* trustee in consultation with the *Plan's* named fiduciaries determines that it is unduly expensive to administer payments of $50 or less ("*de minimus*") to *Settlement Class* members who are former *Plan* participants or the beneficiaries of former *Plan* participants, the *Plan* trustee may treat such *de minimus Class Member Shares* of former *Plan* participants or the beneficiaries of former *Plan* participants as <u>zero</u>, and distribute said monies *pro rata* to the other *Class Members*.

J. In light of the manner in which the data is kept, the historical nature of the data, and the case with which it can be manipulated, it may be appropriate for the *Plan* trustee, with *Co-Lead Counsel's* participation and consent, to make adjustments to reflect the availability of data for purposes of the calculation set forth above and to otherwise simplify some of the features of the calculations set forth in Paragraph 8 without further approval by the *Court*, and such adjustments and simplification shall be acceptable as long as two basic features of the allocation are preserved: (i) that all *Settlement Class* members entitled to a *Class Member Share* receive their share of the net *Settlement Fund* based approximately on the decline in value of Dynegy stock in which their accounts were invested over the period within the *Class* period in which their accounts were so invested in comparison with the total decline in the value of Dynegy stock held in the *Plan* as a whole for the same period; (ii) distributions take place through the *Plan* so as to maximize the tax advantages of investment in the *Plan*.

K. The *Plan* trustee shall follow the *Plan* terms with respect to (i) required distributions of an account balance to an eligible *Settlement Class* member and (ii) forfeiture procedures in the event that the Plan Trustee cannot make a distribution due to such factors as inability to locate the account holder or failure of the account holder to deposit a distribution.

### AWARD OF CO-LEAD COUNSEL'S FEE AND EXPENSES AND INCENTIVE AWARD TO THE NAMED PLAINTIFFS

9. This *Court* finds based on the evidence presented, that a 25% fee is reasonable for the work performed and results achieved in this matter, is fully supported by the applicable Fifth Circuit authority, and is otherwise appropriate.

A. Pursuant to FED. R. CIV. P. 23(h), *Co-Lead Counsel* mailed notice to the *Settlement Class* members stating that *Co-Lead Counsel* would seek 25% of the *Class Settlement Amount* as attorneys' fees and as reimbursement for their expenses. No *Settlement Class* member has objected to *Co-Lead Counsel*'s fee and reimbursement request.

B. The attorneys' fees requested by *Co-Lead Counsel* are reasonable under the circumstances.

  (i) *Co-Lead Counsel* for the *Named Plaintiffs* seek an award of attorneys' fees and reimbursement of expenses of 25% of the $9.975 million common fund created by this *Settlement* under FED. R. CIV. P. 23(h) and 54(d)(2). *Co-Lead Counsel*'s request includes reimbursement for the actual litigation expenses incurred by *Co-Lead Counsel*, currently at $192,734.35. Thus, the actual attorneys' fee component of the request is approximately 23.07%. This fee is more favorable to the *Named Plaintiffs* than the fee contracts they signed with *Co-Lead Counsel*.

  (ii) This *Court*, in fact, has approved an award of attorneys' fee equal to 25% of a settlement fund in a similar, but much larger, ERISA class action case against Dynegy. In its order dated December 10, 2004, this Court stated: "This Court finds based on the evidence presented, that a 25% fee is reasonable for the work performed and the results achieved in this matter, is fully supported by the applicable Fifth Circuit authority, and is otherwise appropriate."[2]

  (iii) The *Actions* involved novel and complex legal theories, and *Co-Lead Counsel* assumed a great deal of risk by taking these *Actions* on a contingency basis. The novelty and difficulty of this case is obvious from this *Court*'s opinions in the *Actions* regarding the *Defendants*' motions to dismiss.[3] The Secretary of Labor's *amicus* brief in the *Holtzscher* appeal further demonstrates the novelty of the issues presented by this case. There was certainly no guarantee that the *Named Plaintiffs* or the *Settlement Class* would recover anything in these *Actions*. The risk to *Co-Lead*

---

[2] *In re Dynegy, Inc. ERISA Litig.*, No. H-02-3076 (S.D Tex. Dec. 10, 2004) (Lake, J.) (order of final approval of class settlement).

[3] *In re Dynegy, Inc. Erisa Litig*, 309 F.Supp 2d 861 (S D. Tex. 2004) (Dynegy ERISA litigation); *Shannahan v. Dynegy, Inc.*, H-06-0160, 2006 WL 3227319 (S D. Tex. Nov. 6, 2006 (this case); *Holtzscher v. Dynegy, Inc.*, H-05-3293, 2006 WL 626402 (S D. Tex. Mar. 13, 2006) (companion case to this case).

        *Counsel* was especially high because McClanahan & Clearman, L.L.P and McDade Fogler, LLP are both small firms.

    (iv) *Co-Lead Counsel* have spent a significant amount of time working on this case, and it will likely take a significant amount of time to supervise the disbursement of the *Net Proceeds*. By pursuing the *Actions* against these *Defendants*, the *Co-Lead Counsel* were necessarily prevented from pursuing other projects.

    (v) *Co-Lead Counsel* obtained a more than adequate benefit and result for the *Settlement Class* given the risk and complexity associated with the *Actions*.

    (vi) *Co-Lead Counsel* presented sworn testimony and other evidence demonstrating that no competent attorney would have taken this case on any basis other than a contingent fee basis. The *Court* is further aware that *Co-Lead Counsel* are highly experienced in class actions and have the necessary familiarity with ERISA pension benefit cases. They have testified that they have not and would not accept a similar case on any basis other than a contingency fee basis.

  C. Accordingly, the *Court* hereby awards *Co-Lead Counsel*, as an attorneys' fee and reimbursement of their expenses of $192,734.35, 25% of the $9.975 million *Class Settlement Amount* created for the benefit of the *Class*, together with interest from the date of the deposit of the *Class Settlement Amount* at the same rate earned by the Fund.

10. The *Court* finds that the *Named Plaintiffs* organized, hired and assisted counsel in discovery and meaningfully participated in the negotiation of the *Settlement*. Without the efforts of the *Named Plaintiffs*, there would be no recovery on behalf of the *Settlement Class*. The *Named Plaintiffs* in the *Actions* are each awarded $7500 as compensation for their effort and as an incentive award, to be paid from the *Class Settlement Amount*.

11. The amounts paid in paragraphs 9 and 10 are to be paid exclusively out of the *Class Settlement Amount* without additional contribution or payment by *Defendants*.

12. Except as otherwise specified in the *Settlement Agreement*, the *Court* shall retain exclusive jurisdiction to resolve any disputes or challenges that may arise as to the performance of the *Settlement Agreement* (including the *Plan of Allocation*) or any challenges as to the performance, validity, interpretation, administration, enforcement or enforceability of the *Class Notice*, this Judgment, the *Settlement Agreement*, the termination for the *Settlement Agreement* or the *Plan of Allocation*.

13. In the event that the *Settlement Agreement* is terminated in accordance with its terms, this Judgment shall be rendered null and void and shall be *vacated nunc pro tunc*, and the *Actions* shall proceed in the manner provided in the *Settlement Agreement*.

14. This judgment is final.

SO ORDERED this 14th day of September, 2007.

HONORABLE EWING WERLEIN, JR.
United States District Judge

#30737 v1